### UNITED STATES v. CHISHOLM.

(Circuit Court, S. D. Alabama, N. D.   May 6, 1907.)

**1. CRIMINAL LAW—TRIAL—DEFENSE OF INSANITY.**

In a criminal prosecution, where the defendant admits the doing of the act charged, but relies on the defense of insanity, such defense has exclusive reference to the act charged and to the time of its commission. The legal presumption is that defendant was sane, and it is the duty of the jury to convict unless on the whole evidence they have a reasonable doubt as to whether defendant when he committed the act was of sufficiently sound mind to know right from wrong and to form a criminal intent, or to resist the impulse to do the act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 53-64, 742-744.]

**2. SAME—EVIDENCE—EXPERT TESTIMONY.**

While, on the issue as to the sanity or insanity of a defendant charged with crime, the opinions of experts are admissible, and it is the duty of the jury to give the same due consideration, such opinions constitute only

a part of the evidence and are not controlling, but the jury should form their own judgment on the issue from all the proof in the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1045, 1081.]

**3. SAME.**

Although a defendant admits the acts charged as a crime and relies wholly on the defense of insanity, it is competent for the prosecution to prove such acts, the conduct of the defendant previously, at the time of, and after, the acts, and subsequent statements or confessions made by him, as evidence which may be considered by the jury in connection with the other evidence on the question of insanity, as well as affording a basis for hypothetical questions to be propounded to medical witnesses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 760.]

**4. SAME—OPINION EVIDENCE—NONEXPERTS.**

The opinion alone of a nonexpert upon a question of insanity is not evidence unless accompanied with a statement of the facts and circumstances within the personal knowledge of the witness upon which that opinion is based.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1045, 1057.]

Indictment for Embezzlement of Funds of a National Bank.
See 149 Fed. 284.

Thomas R. Rhoulhac, U. S. Dist. Atty., W. L. Steele, Asst. U. S. Dist. Atty., and Lee Bradley, Special Counsel.
Frank S. White, for defendant.

HUNDLEY, District Judge (charging the jury). This defendant is indicted for the violation of a federal statute (section 5209, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3497]). The offense charged in the indictment, stated in forms varying in the different counts thereof from 22 to 42, inclusive, is that of embezzlement of funds belonging to a banking association; in this case said association being the First National Bank of Birmingham. The first 21 counts of the indictment are not insisted by the government.

The defendant by his counsel has admitted the taking of the funds, but says he is not guilty as charged, because at the time of the taking of said funds he was suffering from insanity, in this: That the act was done while acting under an insane delusion that he could control the cotton market, and that this insane delusion was of such a nature that it unbalanced his mind and rendered him irresponsible for the act committed. The effect and purpose of these admissions are to support all the charges in the indictment, as to the taking of the money, and require at your hands a verdict of guilty on those charges, unless the proof offered in this case of the mental condition of the defendant at the time he took the money raises in your minds a reasonable doubt of his legal responsibility for his said act. Since, in the absence of the defendant's admissions, he would be presumed to be innocent until the contrary was shown beyond a reasonable doubt, so now, although the law presumes him to be legally responsible, this presumption and his admission would, in the absence of proof as to his mental condition, authorize and require his conviction, still, this proof being made as to his mental condition, you are required to consider it, and if upon

consideration of the whole proof you are fully satisfied that he did the acts charged (which are fully admitted), but are also satisfied beyond a reasonable doubt that at the time he did the acts charged he was legally responsible, you should convict him on the counts in the indictment, but otherwise you should acquit him on said counts.

Every person charged with crime is presumed to be sane—that is, of sound memory and discretion—until the contrary is shown by proof. No act done in a state of insanity can be punished as an offense. The question of the insanity of the defendant has exclusive reference to the act of which he is charged and the time of the commission of the same. If he was sane at the time of the commission of the act, he is punishable by law. If he was insane at the time of the commission of the act, he is entitled to be acquitted. A safe and reasonable test is that whenever it shall appear from all the evidence that at the time of committing the act the defendant was sane, and this conclusion is proven to the satisfaction of the jury, taking in the consideration all the evidence in the case, beyond a reasonable doubt, he will be held amenable to the law. Here, whether the insanity be general or partial, whether continuous or periodical, the degree of it must have been sufficiently great to have controlled the will of the accused at the time of the commission of the act. Where reason ceases to have dominion over the mind, proven to be diseased, the person reaches a degree of insanity where criminal responsibility ceases, and accountability to the law for the purpose of punishment no longer exists.

The real test, as I understand it, of liability or nonliability, rests upon the proposition whether at the time the defendant took the money he had a diseased brain, and it was not partially diseased, or to some extent diseased, but diseased to the extent that he was incapable of forming a criminal intent, and that the disease had so taken charge of his brain and so impelled it that at the time his will power, judgment, reflection, and control of his mental faculties were impaired so that the act done was an irresistible and uncontrollable impulse with him at the time he committed the act. If his brain was in this condition, he cannot be punished; but, if his brain was not in this condition, he can be punished by the law, remembering that the burden is upon the government to establish that he was of sound mind, and by that term it is not meant that he was of perfectly sound mind, but that he had sufficient mind to know right from wrong, and, knowing that the act he was committing at the time he was performing it, was a wrongful act in violation of human law, and he could be punished therefor, and that he did not perform the act because he was controlled by irresistible and uncontrollable impulses. In that state of the case the defendant could not be excused upon the ground of insanity, and it would be your duty to convict him. But, if you find from the evidence, or have a reasonable doubt in regard thereto, that his brain at the time he committed the act was impaired by disease and the embezzlement was the product of such disease, and that he was incapable of forming a criminal intent, and that he had no control over his mental faculties and the will power to control his actions, but simply took the money from the First National Bank of Birmingham while he was laboring under a delusion which absolutely

controlled him, and that his act was one of irresistible impulse, and not of judgment, in that event he would be entitled to your acquittal. However, in the consideration of this question, you must bear in mind, gentlemen, as I have said, that it is a presumption of the law, justified by the general experience of mankind, as well as of considerations of public safety, that a man is presumed to be sane until he is proved to be insane. If this presumption was not indulged, the government would always be under the necessity of adducing affirmative evidence of the sanity of the accused at the outset. And a requirement of that character would seriously delay and embarrass the enforcement of law against crime, and in most cases be unnecessary. Consequently the law assumes that every one charged with crime is sane, and thus supplies in the first instance the required proof of capacity to commit crime. It authorizes the jury to assume at the outset that the accused is criminally responsible for his acts, but that is not a conclusive presumption, which the law upon grounds of public policy forbids to be overthrown or impaired by opposing proof.

It is a disputable, or often designated a rebuttable, presumption, resulting from the connection ordinarily existing between certain facts ——such connection, as said by Greenleaf, in his work on Evidence, not being "so intimate, nor so nearly universal, as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all the evidence to the contrary being rejected; but yet it is so general, and so nearly universal, that the law itself, without the aid of a jury, infers the one fact from the proved existence of the other, in the absence of all opposing evidence."

The defense attempted to be made by the proof is that as a result of certain mental delusions the defendant's mind became so diseased as to render him incompetent or unable to discern the wrong in these acts done by him, or to resist the impulse to do them. It is not every suspicion, or degree of unsoundness of mind, that makes a man irresponsible. It need not be violent, or be manifestly alike on all subjects, but it must be such on the particular subject out of which the acts charged as an offense are claimed to have sprung as to render him incapable by reason of such mental unsoundness to discern the wrong in committing such acts, and it must be shown that the acts resulted from such unsoundness of mind. As was said in the Guiteau Case (D. C.) 10 Fed. 168:

"A jury is not warranted in inferring that a man is insane from the mere facts of his committing a crime, or from the enormity of the crime, or from the mere apparent absence of adequate motive for it, for the law assumes that there is a bad motive, if nothing else appears."

In order to enable you to exercise a safe judgment on the question of the defendant's responsibility at the time of the commission of the acts complained of in the indictment, you have been permitted to hear proof of his habits and conduct for a period of time prior to, during, and since the time of the taking of the money, and as to his health and physical condition prior to the commission of said acts. Ordinarily witnesses are not permitted to give their opinions to the jury, but must state only facts within their knowledge, and leave the jury to draw their own conclusions (under proper instruc-

tions) from the facts. However, upon questions of mental diseases, the jury are given the benefit of the professional opinion of skilled witnesses who have peculiar knowledge of such diseases and of the effect on the faculties of the mind, and of symptoms indicating the presence, species, and degree of mental disorder; but, of course, you must understand that these opinions of these physicians, both for the government and for the defense, are only a part of the proof. And while you are to consider this part of the proof, as every other part of it, carefully, the opinions of these witnesses do not control you in your verdict. You do not and cannot surrender your right to pass upon the whole proof yourselves, nor can you avoid the duty of judging for yourselves on this question of the responsibility of the defendant on the whole proof in this case. Here, as is always the case in jury trials, you are required to judge of the weight of the testimony and find your conclusions of guilt or not from your own view of the whole proof under the instructions given you by the court.

During the progress of this trial it has been my province to decide what of the testimony it was proper should be offered you for consideration, and by the whole testimony in this case I mean that you must consider only that testimony which I have permitted to go to you, and none of that which I have withdrawn from your consideration. It was my province to decide what testimony should be presented to you tending to prove the issues here submitted, and it is your province exclusively to decide whether any given part of the testimony is true, how far it is true, what it does in fact prove, as well as to decide what the whole testimony proves. It is my province, too, to sum up the testimony to you whenever and as far as I may deem it necessary or proper, but this does not exclude or relieve you from bearing in mind every part of the testimony that your own recollection retains, nor does any view of the weight or value of the testimony which my summary may seem to imply in any manner bind you, or qualify your right and duty to judge for yourselves of the value of the testimony which has been admitted.

The testimony in this case tends to show that the defendant was paying teller in the First National Bank of Birmingham at the time he took the money; that he was a young man of fine character, industrious, and efficient in his particular line of employment; that he became engaged in speculating in cotton futures and stocks; that, in order to carry on his speculations in this regard, he abstracted from the vault of the bank various sums at various times, aggregating over $230,000, and that he recouped of his losses during the period of his speculations the sum of about $130,000, thus practically leaving his total shortages in round numbers the sum of $100,000; that after he took this money he left on a vacation, going to Atlantic City, where he remained for a period of time, and during his absence the taking of the money was discovered by the bank officials, who awaited his return, and on his arrival in this city he was met by a private detective and some of the bank officials, and, going to a room, he was first confronted with the fact of the missing money. At first he strenuously denied all knowledge of it, but after a time, when

confronted with certain facts connected with his relation with the bank and the relations of others thereto, he confessed that he had taken the money, which he had used in speculation and also expressed contrition for his conduct in the premises. Although the defendant admitted the taking of the money, I permitted the government to produce witnesses on the stand to prove all the facts within its possession in relation to the acts of the defendant in taking this money. I permitted this proof on the part of the government for a twofold reason: First, in the absence of a general plea of guilty by the defendant, the government had a right to present its case in its own manner in keeping, of course, with the proper rules of evidence; second, this evidence was relevant and proper upon which to base a hypothetical question to be presented to the medical experts whom I knew were to be examined in this case, upon the question of insanity vel non. Again, the conduct of the defendant during the time he took the money, his statements made on his arrival from his vacation, his confession, and the manner of his confession, are all evidence to be taken into consideration by the jury in connection with the other evidence in the case in assisting them in determining the question of the defendant's sanity at the time of the commission of the offence.

When the experts were placed upon the stand, they were interrogated by hypothetical questions, detailing in substance certain facts in the case in relation to the mental condition of the defendant. This was competent testimony, and is the usual way of presenting evidence by experts, but the value of testimony based upon hypothetical questions depends upon whether the statements in the hypothetical questions are sustained by proof in the case. You must in this connection take and consider the testimony of these experts, in connection with the other testimony in the case, as bearing upon the question of the sanity or insanity of this defendant at the time he took the money. But the testimony of these experts is not all the evidence by any means upon the question of the defendant's sanity or insanity, but there is other evidence presented to the jury on this question, which they must consider—evidence of witnesses as to facts in reference to the conduct of the defendant at the time of the taking of the money, prior thereto, and since the taking, which must be considered by the jury in connection with all the other testimony in the case.

I permitted witnesses who were not experts to state in a way their opinion in reference to the defendant's sanity, but the jury must not forget in the consideration of the opinion of these witnesses, whom I may call nonexperts, that they must not consider their opinions alone, and place them in opposition to the opinions of the medical experts who have been placed on the stand, and who have been proven to be men particularly skilled within the line of their professional training. The opinion of a proven expert may be given in evidence upon facts within his knowledge, or it may be given upon a hypothetical question put to the expert and based upon the particular facts which have been given in evidence upon the trial of the case at issue. The opinion alone of a nonexpert upon a question of insanity is not evidence, unless that opinion is accompanied with a statement of the facts

and circumstances within the personal knowledge of the nonexpert upon which that opinion is based. The jury being informed as to the witness' opportunities to know all the circumstances, and of the reasons upon which he rests his statement as to the ultimate general fact of sanity or insanity, are permitted to test the accuracy or soundness of the opinion expressed; and thus, by using the ordinary means for the ascertainment of truth, reach the ends of substantial justice.

In this connection, you must consider the testimony of the witnesses in reference to the conduct of the defendant before and since the commission of the offense charged, consider the opportunities the witnesses had for observing the defendant's actions and his manner, consider the fact, if it be a fact, that his manner towards his family changed about the time of the commission of this offense, and in that connection it is within your peculiar province under the testimony in this case to determine whether this change in the actions and conduct of the defendant was superinduced by a giving away of his mental condition, or by his depression and perplexity of mind, superinduced by the knowledge of his shortage in the bank and the probability of detection. You must consider the fact, if it be a fact, that he had an attack of fever before the taking of the money, and further consider under all the evidence what effect, if any, this fever had upon his mental condition, or whether it only affected him physically and not mentally or both. You must consider the evidence introduced in this case of the family history of the defendant in relation to insanity, and in considering this evidence you must consider it in connection with the testimony of the experts upon this subject. Is ancestral insanity in fact transmitted, and is the fact of this insanity a fact which can bear upon the question of the defendant's insanity? Or is it a fact to be deduced from the testimony of the experts in this case that the insanity of the ancestors of this defendant is not a proper basis upon which to predicate the defendant's sanity or insanity, but that in such cases, after insanity is first proven, the insanity of one's ancestors may be looked to to find the cause.

In the further consideration of the defendant's conduct in relation to his speculations in cotton, and his delusions that he had received some supernatural power by which he was enabled to control the cotton market, you must consider all the evidence bearing upon this question, including that of the experts. This peculiar kind of mental aberration, if you find from the evidence that it was a mental aberration, has been referred to in the testimony in this case as "grandiose delusions."

Now, gentlemen, in considering the question as to whether the defendant's mind was afflicted by such delusions, consider the fact, if it be a fact, whether or not persons so afflicted are inclined to be cheerful, buoyant, and boastful; consider the fact, if it be a fact in this case, in this connection, whether or not the defendant was depressed, morose, and changed in his feelings towards the members of his family. In considering the question of his being afflicted with such delusion, you must also consider the fact, if it be a fact, whether or not persons so afflicted generally act solely upon their own ideas, or whether they act upon the ideas or suggestions of others, and in this connection you

must consider the further fact, if it be a fact, whether or not the defendant in fact acted upon suggestions made him by others verbally or in writing, or on his own ideas.

In this connection you must consider the further fact, if it be a fact, whether or not the defendant, in addition to speculating in cotton, speculated in stocks as well. Take into consideration all of his acts and conduct prior to, at the time, and since the commission of the offense charged; consider the fact, if it be a fact, that, in order to cover up his transactions with the bank and prevent detection, he used the name of S. M. Webster; consider the fact, if it be a fact, of the manner in which he entered charges and credits to various concerns who had dealings with the bank in which he was an officer; consider his manner and method adopted to cover up his act, if you believe from the evidence that such was his conduct; consider his confessions, his manner in making said confessions, and his statements as detailed by witnesses from the witness stand; consider all these facts and circumstances, I say, in connection with all the testimony in the case, in order that you may determine whether or not the defendant was sane at the time of the commission of the offense, remembering that the test of responsibility, where insanity is asserted, is the capacity to distinguish between right and wrong with respect to the act, and the absence of insane delusions respecting the same.

There is evidence in this case tending to show that Chisholm believed he could control the cotton market. Upon this phase of the case, you are instructed that if the evidence shows that the defendant had such belief and that it was the result of his belief that he could control the cotton market and not an insane delusion, and that he acted upon that belief, thinking that he had the right to take the money from the bank in order to carry out his belief, but at the same time he knew it was a violation of human law, and he would be punished therefor, in that event, it would not be an insane delusion upon the part of Chisholm, but would be an erroneous conclusion, and, being so, would not excuse him from the consequences of his act. And also if you further believe from the evidence that he came to the conclusion that he could control the cotton market, and this conclusion of his that he could control the cotton market was the sole inducement that caused him to take the money, he would not be guiltless, and would be responsible therefor. Upon the other hand, I charge you that if you should find from the evidence in this case that Alexander R. Chisholm, the defendant, was possessed of a delusion that he believed that he could control the cotton market, and if you further find that such delusion and belief on the part of Alexander R. Chisholm was the product of a diseased brain, or if you have a reasonable doubt that such condition of brain existed at the time of the taking of the money, and that his act was at that time the result of such diseased brain, you will acquit him.

As I have already said, if you have a reasonable doubt of the guilt of the defendant, or a reasonable doubt of the defendant's sanity at the time of the commission of the offense, you must give him the benefit of the doubt and acquit him. The doctrine of the reasonable doubt is a legal right almost as old as law itself. Its purpose is to shield the

innocent, and not a cloak for the guilty. A reasonable doubt is a doubt which a reasonable man may have. You must not go out into the field of speculation to discover a doubt as to this defendant's guilt or innocence, nor must you go beyond the domain of the testimony in this case, but such a doubt must be a doubt only that may be engendered in the mind of a reasonable man from the evidence produced in the trial of this cause. It must not be merely a possible or speculative doubt, but an actual and substantial doubt, arising out of the evidence which is consistent with sound reason. The question you must decide is, did the defendant have the mental ability at the time of the commission of the crime to discriminate between right and wrong with respect to the offense charged in the indictment? Did he know the nature and quality of his act when he committed it, and that it was wrong, and a violation of the law of the land for which he would be punished? You must find the answer to these questions in the testimony alone.

In conclusion, gentlemen, and in addition to what I have said to you in reference to the facts in this case, you are to determine the following questions: First. Was the defendant, Chisholm, at the time he committed the act, or acts, of taking the money, laboring under an insane delusion produced by an impaired brain, and did it go to the extent for the time being of controlling his will power, reflection, reason, and judgment, and was the act committed by reason of such insane delusions? If the proof has shown beyond a reasonable doubt that such was not the case, you will convict the defendant, but, if there is a reasonable doubt as to such mental condition, you will resolve such doubt in favor of the defendant and acquit him. Second. Did Chisholm commit the act, or acts, of taking the money not laboring under an insane delusion, but believing that he could control the cotton market, and at the time of taking the money he took the same solely upon such belief, and for the purpose of carrying out his belief that he could control the cotton market, and was not laboring under an insane delusion? If you believe this state of case existed, and so believe it beyond a reasonable doubt, you will find the defendant guilty as charged in this indictment.

Upon the whole case, therefore, if you are satisfied beyond a reasonable doubt that at the time he took this money he knew what he was doing, and knew it was wrong to do it, and he was not subject to an irresistible impulse springing from a diseased mind, you should render a verdict of guilty as charged in the indictment. If you are not so satisfied, you should return a verdict of not guilty.