## SMITH v. UNITED STATES.

Court of Appeals of District of Columbia. Argued November 6, 1929. Decided December 2, 1929.

No. 4951.

E. Russell Kelly, of Washington, D. C., for appellant.

Leo A. Rover and William H. Collins, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellant, defendant below, was convicted of the crime of murder in the first degree, and was sentenced to death. From the judgment, this appeal was taken.

It is conceded that defendant committed the crime charged. No good purpose, therefore, would be subserved in reciting the horrible circumstances attending the conception and perpetration of the crime. A single question of law is presented for our consideration. The sole defense interposed on behalf of the defendant was insanity, and counsel for defendant requested the court to submit to the jury the following prayer: "The jury are instructed that if they believe from the evidence that at the time of committing the acts charged in the indictment the defendant was suffering from such a perverted and deranged condition of his mental faculties as rendered him incapable of distinguishing between right and wrong, or unconscious at such time of the nature of the act charged in the indictment while committing the same, or where though conscious of them and able to distinguish between right and wrong, and to know the acts were wrong, yet his will, the governing power of his mind, was, otherwise than voluntarily, so completely destroyed that his action was not subject to it but beyond his control, it will be their duty to acquit the defendant, and in such case their verdict shall be not guilty."

No objection was made by counsel for the government to the granting of the prayer.

Indeed counsel suggested his willingness that it should be granted. The trial justice, however, denied the prayer, and in his general charge defined insanity as follows: "I want to tell you what the legal definition of sanity and insanity is in connection with the charge of the commission of a crime. That is the definition by which you and I are both bound. I want to say to you that a person may be insane and criminally responsible, just as a person may be insane and civilly responsible for that which he does. These are the limits within which the jury must act in this case. You are instructed that the term 'insanity,' as used in this defense, means that you must find, before you may reach a verdict of not guilty because of insanity, that the defendant was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of what he was doing—that is to say, not to know what he was doing—or, if he did know it, that he did not know that he was doing wrong. If you have no reasonable doubt but that the defendant did know what he was doing, the nature and quality of what he was doing, and if you have no reasonable doubt but that he did know that he was doing wrong, then you may not find a verdict of not guilty because of insanity, because if he did know what he was doing, if he did know what he was doing was wrong, then in the eyes of the law he was a man of sound mind and legally responsible for what he was doing."

Laying aside the objectionable negative style of the charge, we think it erroneous in point of law, in that it ignores the modern well-established doctrine of "irresistible impulse." The English rule, followed by the American courts in their early history, and still adhered to in some of the states, was that the degree of insanity which one must possess at the time of the commission of the crime in order to exempt him from punishment must be such as to totally deprive him of understanding and memory. This harsh rule is no longer followed by the federal courts or by most of the state courts. The modern doctrine is that the degree of insanity which will relieve the accused of the consequences of a criminal act must be such as to create in his mind an uncontrollable impulse to commit the offense charged. This impulse must be such as to override the reason and judgment and obliterate the sense of right and wrong to the extent that the accused is deprived of the power to choose between right and wrong. The mere ability to distinguish right from wrong is no longer the correct test either in civil or criminal cases, where the defense of insanity is interposed. The accepted rule in this day and age, with the great advancement in medical science as an enlightening influence on this subject, is that the accused must be capable, not only of distinguishing between right and wrong, but that he was not impelled to do the act by an irresistible impulse, which means before it will justify a verdict of acquittal that his reasoning powers were so far dethroned by his diseased mental condition as to deprive him of the will power to resist the insane impulse to perpetrate the deed, though knowing it to be wrong.

In Insurance Company v. Rodel, 95 U. S. 232, 240, 24 L. Ed. 433, the court charged the jury in part as follows: "It is not every kind or degree of insanity which will so far excuse the party taking his own life as to make the company insuring liable; to do this, the act of self-destruction must have been the consequence of insanity, and the mind of the deceased must have been so far deranged as to have made him incapable of using a rational judgment in regard to the act which he was committing. If he was impelled to the act by an insane impulse, which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties on the act which he was about to do, the company is liable."

The court, after stating that this charge followed the charge upheld in Life Insurance Company v. Terry, 15 Wall. 580, 21 L. Ed. 236, said: "We think, therefore, that there was no error in the charge as given. It follows that the judge properly refused the request to charge that the plaintiff could not recover if the insured knew that the act which he committed would result in death, and deliberately did it for that purpose. Such knowledge and deliberation are entirely consistent with his being, in the language of the charge, 'impelled by an insane impulse, which the reason that was left him did not enable him to resist;' and are, therefore, not conclusive as to his responsibility or power to control his actions."

The law, as announced in the Terry and Rodel opinions, was again affirmed in Manhattan Life Insurance Company v. Broughton, 109 U. S. 121, 131, 3 S. Ct. 99, 105, 27 L. Ed. 878, where the court used the following decisive language: "These instructions are in exact accordance with the adjudications in the cases of Terry and Rodel; and upon consideration we are unanimously of opinion that the rule so established is sound-

er in principle, as well as simpler in application, than that which makes the effect of the act of self-destruction, upon the interests of those for whose benefit the policy was made, to depend upon the very subtle and difficult question, how far any exercise of the will can be attributed to a man who is so unsound of mind that, while he foresees the physical consequences which will directly result from his act, he cannot understand its moral nature and character, or in any just sense be said to know what it is that he is doing."

In the later case of Davis v. United States, 165 U. S. 375, 17 S. Ct. 360, 362, 41 L. Ed. 750, where the defendant was convicted of murder and his chief defense was insanity, the Supreme Court reviewed the charge of the lower court to the extent of considering specifically that portion where the trial court defined insanity as follows: "The term 'insanity,' as used in this defense, means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing, or where, though conscious of it, and able to distinguish between right and wrong, and know that the act is wrong, yet his will—by which I mean the governing power of his mind—has been otherwise than voluntarily so completely destroyed that his actions are not subject to it, but are beyond his control."

The court, commenting upon this portion of the charge of the trial court, said: "Although the court, in addition to this specific language, enlarged upon the question, in its charge in reference to the matter of insanity covering several pages of the record, and containing quotations from many adjudged cases, we find nothing which qualifies or restricts the definition as above quoted." Thus the court clearly indicated that, had the portion of the charge above quoted been limited or restricted in other portions of the charge, it would have been regarded as error. Besides, this is merely an affirmance of the rule announced in the insurance cases. It will be observed that the language used in the charge in the Davis Case was, in all substantial particulars, quoted by counsel for defendant in the prayer rejected in the present case.

The doctrine of irresistible impulse, as adopted and followed by the Supreme Court, has been likewise followed in the courts of this District. True, in the early case of Taylor v. United States, 7 App. D. C. 27, this rule was rejected by the trial court; but the question was not presented to the Court of Appeals. The objection there made was to certain language of the charge relating to "emotional insanity," which is clearly distinguishable from and has little physiological relation to irresistible impulse. In Gonzales v. United States, 40 App. D. C. 450, 458, where the question involved was the sufficiency of the petition for a lunacy hearing, the court held that the principle of irresistible impulse is one of the tests of insanity.

An examination of the record in Hamilton v. United States, 26 App. D. C. 382, 394, where the defense was insanity in a homicide case, discloses that an instruction embracing the doctrine of irresistible impulse was given by Mr. Justice Wright in the trial of the case in the Supreme Court of the District. Error was not assigned on this point, and it was not considered by this court. The court, however, in its opinion, said: "We have disposed of all the questions raised upon this appeal. The charge of the learned court below was just and comprehensive, as well as fair to the appellant." The same situation arose in the late case of Perrygo v. United States, 55 App. D. C. 80, 2 F. (2d) 181, where the record discloses that an instruction in every respect similar to the prayer requested in this case was given, but, as in the Hamilton Case, the matter was not considered in this court. It may be suggested, however, that in a murder case, had the court been convinced of error in the charge of the court below, it would of its own motion have considered it.

In view of the uniform adoption of this doctrine by the trial courts of the District, and the approval of the rule by the Supreme Court, we have no hesitation in declaring it to be the law of this District that, in cases where insanity is interposed as a defense, and the facts are sufficient to call for the application of the rule of irresistible impulse, the jury should be so charged.

Objection is made by counsel for the government that the facts in this case were not sufficient to call for the allowance of the prayer requested by counsel for the defense. We think this objection is not well taken. One of the physicians who was examined as a witness on the issue of insanity testified "that he would not say that a person who killed his daughter was per se of unsound mind; that the witness believed that at the time the defendant grabbed his daughter he knew what he was doing; and probably appreciated that he was doing wrong," whereupon counsel for the government propounded the following question: "You say that he did? A. He appreciated it, but he was unable to—he knew the right and wrong, but

he was unable to carry it through. Q. You mean he was unable to carry the right through and refrain from doing the wrong? A. Yes." Another physician testified as follows: "Q. Do you think that, at the time he committed that act, he had full recognition of what he was doing, namely, killing his daughter, was wrong? A. Of course, he had the idea, but he was incapable of doing as he would like to do." The defendant himself testified "that after he grabbed her he felt that he would give anything if he could stop, but that he could not." A physician who testified for the prosecution "stated that it would be difficult to say if, after the commencement of the act, the defendant was in such a mental state that he could discontinue it."

Considering the evidence as a whole, we are of opinion that it was error to refuse the prayer requested by the defense, and, regardless of the gravity of the offense, or the probable guilt or innocence of the accused, a fundamental principle of law is involved, and a new trial should be granted; in other words, the defendant has been deprived of a substantial right which the law accords him, and which is essential to a fair and impartial trial.

The judgment is reversed, and the cause is remanded for a new trial.