**Bobby Jack HOWARD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15665.**

United States Court of Appeals
Fifth Circuit.

April 20, 1956.

W. V. Dunnam, Jr., Waco, Tex.; for appellant.

Lonny F. Zwiener, Asst. U. S. Atty., Austin, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, RIVES, TUTTLE,

CAMERON, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

A rehearing before the court en banc was ordered by a majority of the judges of this Circuit, 28 U.S.C.A. § 46(c), to settle the questions upon which the judges composing the original panel were in disagreement. See Howard v. United States, 5 Cir., 229 F.2d 602.

As to the most important question, the proper test of criminal responsibility where insanity is asserted, we note that the Court of Appeals of the District of Columbia has heretofore taken the position that the Supreme Court in Davis v. United States, 165 U.S. 373, 375, 17 S.Ct. 360, 41 L.Ed. 750, at least impliedly recognized the test as being either the incapacity from some mental disease or defect to distinguish between right and wrong with respect to the act, or the inability from such disease or defect to refrain from doing wrong in the commission of the act,[1] and that its decision so indicating has been cited with apparent approval by the Supreme Court.[2] See also, Matheson v. United States, 227 U.S. 540, 543, 33 S.Ct. 355, 57 L.Ed. 631; Weihoffen, "Mental Disorder as a Criminal Defense", pp. 129, 130.

■ In the face of such recognition by the Supreme Court of a test of criminal responsibility, we do not feel at liberty to consider and decide whether in our opinion the recent modification of such test in the District of Columbia[3] is sound or unsound, nor whether some other test should be adopted. This Circuit follows the law as stated by the Supreme Court and leaves any need for modification thereof to that Court, while the District of Columbia Circuit is entrusted with a considerable degree of autonomy with respect to law enforcement in the District.[4] We, therefore, leave unchanged the test of criminal responsibility as thus established.

1. "In the later case of Davis v. United States, 165 U.S. [373] 375, 17 S.Ct. 360, 362, 41 L.Ed. 750, where the defendant was convicted of murder and his chief defense was insanity, the Supreme Court reviewed the charge of the lower court to the extent of considering specifically that portion where the trial court defined insanity as follows: 'The term "insanity," as used in this defense, means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing, or where, though conscious of it, and able to distinguish between right and wrong, and know that the act is wrong, yet his will—by which I mean the governing power of his mind—has been otherwise than voluntarily so completely destroyed that his actions are not subject to it, but are beyond his control.'

"The Court, commenting upon this portion of the charge of the trial court, said: 'Although the court, in addition to this specific language, enlarged upon the question, in its charge in reference to the matter of insanity covering several pages of the record, and containing quotations from many adjudged cases, we find nothing which qualifies or restricts the definition as above quoted.' Thus the court clearly indicated that, had the portion of the charge above quoted been limited or restricted in other portions of the charge, it would have been regarded as error." Smith v. United States, 59 App.D.C. 144, 36 F.2d 548, 550, 70 A.L.R. 654.

2. "It is the contention of the defense that the mental and emotional qualities of petitioner were of such a level at the time of the crime that he was incapable of deliberation and premeditation although he was then sane in the usual legal sense. He knew right from wrong. See M'Naghten Rules, 10 C. & F. 200, 210. His will was capable of controlling his impulses. Smith v. United States, 59 App.D.C. 144, 36 F.2d 548, 70 A.L.R. 654." Fisher v. United States, 328 U.S. 463, 466, 66 S.Ct. 1318, 1320, 90 L.Ed. 1382.

3. Durham v. United States, 94 U.S.App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430.

4. "Matters relating to law enforcement in the District are entrusted to the courts of the District. Our policy is not to interfere with the local rules of law which they fashion, save in exceptional situations where egregious error has been committed." Fisher v. United States, 328 U.S. 463, 476, 66 S. Ct. 1318, 1325, 90 L.Ed. 1382.

■ This Court is not in position to hold that the district court erred in treating insanity as a jury issue. Only slight evidence of insanity of a defendant at the time of commission of the act is required to raise the issue for submission to the jury.[5]

■ We think, however, that the district court imposed upon the defendant too heavy a burden when it charged that the presumption of sanity continues "until the contrary is shown by proof," and again, "until he is proven to be insane." The rule is that, "If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offense charged", Davis v. United States, supra, 160 U.S. at page 488, 16 S.Ct. at page 358; see also, Lee v. United States, supra, 91 F.2d at pages 330–331; Weihoffen, "Mental Disorder as a Criminal Defense", pp. 226, 241.

■ The district court further erred in its charge in requiring the defendant to adduce proof *both* that he did not know the difference between right and wrong *and* that he was unable to refrain from doing wrong. *Either* condition existing at the time of the commission of the act and as the result of some mental defect or disease was sufficient to make the defendant not guilty. Cf. People v. Kelly, 302 N.Y. 512, 99 N.E.2d 552, 553, 554; Weihoffen, "Mental Disorder as a Criminal Defense", pp. 74, 75, 76.[6]

5. Davis v. United States, 165 U.S. 373, 375, 17 S.Ct. 360, 41 L.Ed. 750, 160 U.S. 469, 486, 16 S.Ct. 353, 40 L.Ed. 499; Lee v. United States, 5 Cir., 91 F.2d 326, 330–331.

6. The charge on insanity in this case, copied as appendix "A" to the dissenting opinion on original hearing, 229 F.2d 608, et seq., was modeled after the charge in United States v. Chisholm, C.C.S.D. Ala., 153 F. 808, which in turn had borrowed from the charge copied in Hotema v. United States, 186 U.S. 413, 416, 22 S.Ct. 895, 46 L.Ed. 1225. There was,

Upon rehearing, therefore, affirmance is vacated, the judgment of conviction is reversed, and the cause remanded for another trial.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

For the reasons stated in the majority opinion filed in this case February 2, 1956, 5 Cir., 229 F.2d 602, 607, I think the judgment of the Court below ought to be affirmed and I dissent from the reversal now entered on the petition for rehearing. Specifically, the majority reverses because it conceives that the Court below erroneously charged the jury on the burden of proof as to insanity and in defining the test of insanity (conjunctive instead of disjunctive) to be applied by the jury. The Court below got its entire charge on those points from two Supreme Court decisions. Moreover, the language of the dissenting opinion of Judge Rives, upon which the Court en banc ordered the rehearing, together with that of the majority opinion now filed, constrain me to consider, at the outset and in more detail than in the original majority opinion, the state of law with respect to insanity as a defense and the charge of the Court below relating thereto.

The dissenting opinion took the original majority to task because it "approves the century old 'right and wrong test' of the McNaghten case, 10 Cl. and Finn. 200, 8 Eng.Rep. 718 (1843), which has heretofore received the approval of this Court, but not of the Supreme Court

however, the significant addition in two places in the instant charge of the conjunctive clause, "and he did not then know the difference between right and wrong." Further, the last paragraph of the charge on insanity in this case, 229 F.2d 610, was borrowed from an expression appearing about the middle of page 815 of 153 F., United States v. Chisholm, supra, but omitted the further requirement of the test there expressed, "and *the absence of insane delusions respecting the same.*"

* * *";[1] and embraced the revolution-ary doctrine of Durham v. United States, 1954, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, with the statement, "I agree with the District of Columbia Circuit * * * that the better rule, more consonant with the developing science of psychiatry, is to ascertain simply, was the defendant suffering from a mental defect or disease which caused him to commit the criminal act?"

While the majority opinion now filed does not accept or reject the doctrines of Durham, it does look to a decision of the D.C.Circuit[2] for a delineation and appraisal of the decisions of the Supreme Court and for a declaration of what those decisions mean.[3] The conclusions reached in the majority opinion seem, therefore, to be based upon the "position" taken by the D. C. Court to the effect that Supreme Court decisions had impliedly recognized the rule upon which the reversal is based.

The "right and wrong test" completely discarded by the Durham case became firmly established as the law of insanity in this country under the two decisions rendered by the Supreme Court, in Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499, and 165 U.S. 375, 17 S.Ct. 360, 41 L.Ed. 750. This Court is able to read and understand those cases and decide upon their meanings without the necessity of resorting to the estimate placed by another court upon the holdings it conceived to be implicit in those decisions.

Davis was found guilty of murdering Sol Blackwell at the Creek Nation, in the Indian territory, within the Western District of Arkansas, and sentenced to be hanged. The indictment charged that the murder had been committed "feloniously, wilfully, and of his malice aforethought". No counsel appearing upon appeal to represent Davis, the Assistant Attorney General presented both sides before the Supreme Court. The brief of the Attorney General showed that the question presented was whether the burden of proof was "on the defendant to establish insanity to the reasonable satisfaction of the jury", or whether the jury should acquit "if the whole evidence raises a reasonable doubt in their minds as to whether the defendant is sane or not". The Supreme Court resolved that conflict by announcing that Davis was "entitled to an acquittal of the specific crime charged if, upon all the evidence, there is reasonable doubt whether he was capable in law of committing crime".[4] The syllabus, 160 U.S. at page 469, thus summarizes what was decided: "The jury cannot properly return a verdict of guilty of the offence charged if, upon the whole evidence, from whichever side it comes, they have a reasonable doubt whether, at the time of killing, the accused was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing."

In developing this "right and wrong" thesis the Supreme Court, 160 U.S. 479,

---

**1.** This statement is, in my opinion, insupportable as the Supreme Court, in its first decision of the Davis case, dealt with the McNaghten case at length and, in my opinion, approved the right and wrong test as therein developed. Certainly that test has been approved many times by the Supreme Court in later decisions herein discussed.

**2.** Smith v. United States, 59 App.D.C. 144, 36 F.2d 548, 70 A.L.R. 654.

**3.** We refer to this quotation from the majority opinion: "We note that the Court of Appeals of the District of Columbia has heretofore taken the position that the Supreme Court in Davis v.

United States, 165 U.S. 373, 375, 17 S. Ct. 360, 41 L.Ed. 750, at least impliedly recognized the test as being either the incapacity from some mental disease or defect to distinguish between right and wrong with respect to the act, or the inability from such disease or defect to refrain from doing wrong in the commission of the act, and that its decision so indicating has been cited with apparent approval by the Supreme Court." The Supreme Court opinion referred to is Fisher v. United States, 328 U.S. 463, 466, 66 S.Ct. 1318, 90 L.Ed. 1382. We shall attempt to demonstrate *infra* that this case does not support that position.

**4.** 160 U.S. 484, 16 S.Ct. 357.

16 S.Ct. 355, took up first the English cases, declaring "the most deliberate and careful statement of the doctrine in the English courts is to be found in M'Naghten's Case * * * decided in 1843". Its quotation from that case concluded with a statement of the test as being whether "'the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong'."

Thereupon, Mr. Justice Harlan, who wrote the first Davis opinion, discussed more than twenty cases from state and federal courts, as well as such commentaries as those of Blackstone, Chitty, and Greenleaf. These words of the Justice, 160 U.S. at page 488, 16 S.Ct. at page 358, may be considered as epitomizing the Court's findings from the many authorities considered:

"His guilt cannot be said to have been proved beyond a reasonable doubt—his will and his acts cannot be held to have joined in perpetrating the murder charged—if the jury, upon all the evidence, have a reasonable doubt whether he was legally capable of committing crime, or (which is the same thing) whether he willfully, deliberately, unlawfully, and of malice aforethought took the life of the deceased. As the crime of murder involves *sufficient capacity to distinguish between right and wrong,* the legal interpretation of every verdict of 'guilty as charged' is

that the jury believed from all the evidence beyond a reasonable doubt that the accused was guilty, and was therefore responsible criminally for his acts." [5] [Emphasis added.]

Upon remand of the Davis case the trial court followed the opinion of the Supreme Court and placed the burden of establishing his insanity upon the Government, and he was again convicted and the Supreme Court affirmed, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750.[6]

The majority opinion cites also the decision of this Court in Lee v. United States, 5 Cir., 91 F.2d 326, 330–331. Nothing in that decision gives support to the effect attributed to it by the majority. In that case the conviction of Lee was affirmed, and all of the language used by the Court was dictum. Nevertheless, the decision recognized that "to be available as a defense the insanity of the accused must be such as to deprive him of mental capacity to distinguish between right and wrong". It also recognized that a rebuttable presumption exists at the outset that the accused is sane. These ideas are consonant with what the Davis cases had decided and with the general law as recognized throughout the country. The majority opinion cites also Fisher v. United States, 1946, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382, as tending to support the theses upon which the majority opinion rests. The opinion asserts that the Fisher case was thought by the Court of Appeals of the District of Columbia to have approved that court's doctrine as announced in Smith

---

5. The first Davis opinion with approval from decisions of state and federal courts expressions such as these: "'to render a person irresponsible for crime on account of unsoundness of mind, the unsoundness should according to law as it has long been understood and held, be such as rendered him incapable of knowing right from wrong'"; and, "'that the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know he was doing what was wrong'"; and "One who takes human life cannot be said

to be actuated by malice aforethought * * * unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act"; and, "the crime of murder involves sufficient capacity to distinguish between right and wrong * * *"; and, "'if there be any doubt about the will, the faculty of the prisoner to discern between right and wrong, why should he be deprived of the benefit of it when both the act and the will are necessary to make out the crime?'"

6. And cf. Hotema v. United States, 186 U.S. 413, 22 S.Ct. 895, 46 L.Ed. 1225.

v. United States, supra, Note 2. The majority opinion here carefully refrains from so construing the Fisher case, and a reading of the Supreme Court opinion serves to explain the reluctance of the majority to espouse the estimate placed upon that decision by the District of Columbia Court.

The death sentence had been imposed upon Fisher for the commission of a heinous crime in the District of Columbia, and the Court of Appeals had affirmed. 80 U.S.App.D.C. 96, 149 F.2d 28. The majority opinion quotes in Note (2) a portion of the Supreme Court's opinion, but the true quality and extent of that holding can be better understood if the language following that so quoted is taken into consideration.[7] The instruction mentioned in Note 7 was refused, and the Supreme Court affirmed. It is interesting to note that the trial court in the Fisher case left out the disjunctive "or" in giving an abstract definition of insanity, 328 U.S. at page 467, 66 S.Ct. at page 1320: " 'Insanity, according to the criminal law, is a disease or defect of the mind which renders one incapable to understand the nature and quality of his acts, to *know that it is wrong, to refrain from doing* the wrongful act.' " This instruction put before the jury the intellectual phase involving knowledge of what is wrong and the phase involving the will, refraining from doing the wrongful act, and these two elements were not separated by the disjunctive as the majority opinion holds to be requisite.

It could be asserted that the Supreme Court, by failing to reverse Fisher's conviction and approving the refusal of additional instructions on the subject, approved a charge embracing intellect and will as joint requisites to proof of in-

sanity negativing criminal intent. Such an argument would be fully as forceful as that indulged in by the majority in its secondhand construction of the holding of the Davis cases. At all events, the Supreme Court affirmed the conviction with the death sentence and, resisting the fervent importunities that it adopt the concepts afterward embraced by the Court of Appeals of the District of Columbia in the Durham case, it used these words, 328 U.S. at page 476, 66 S.Ct. at page 1324: "It may be that psychiatry has now reached a position of certainty in its diagnosis and prognosis which will induce Congress to enact the rule of responsibility for crime for which the petitioner contends. For this Court to force the District of Columbia to adopt such a requirement for criminal trials *would involve a fundamental change in the common law theory of responsibility.* We express no opinion upon whether the theory for which petitioner contends should or should not be made the law of the District of Columbia. *Such a radical departure from common law concepts* is more properly a subject for the exercise of legislative power or at least for the discretion of the courts of the District." [Emphasis added.]

It is clear from this analysis of the decisions relied upon as the basis for the majority opinion that these cases: (1) are not authority for the proposition that the test concerning intellect and will must be stated in the alternative,—by using the disjunctive instead of the conjunctive; (2) that the burden rests upon the Government to establish criminal intent which includes the burden to negative insanity; (3) and that the right and wrong theory is still the law of the land except in the District of Columbia which

---

**7.** The following statements are taken from the opinion, coming immediately after that quoted in Note (2) of the majority opinion: "Testimony of psychiatrists to support petitioner's contention was introduced. An instruction charging the jury to consider the personality of the petitioner in determining intent, premeditation and deliberation was sought and refused. From the evidence of the psy-

chiatrists for the defense, the jury might have concluded the petitioner was mentally somewhat below the average with minor stigmata of mental subnormalcy. An expert testified that he was a psychopathic personality of a predominately aggressive type. There was evidence that petitioner was unable by reason of a deranged mental condition to resist the impulse to kill Miss Reardon."

largely makes its own rules (Note 4, Majority opinion). It remains but to project the actions of the lower Court against those established principles as supplemented by other Supreme Court decisions.

(1) The thesis that the Court below erred in using· the conjunctive in its charge instead of the disjunctive finds no support in decided cases. If that is to be the law, it will be because the majority has chosen to make it so by blazing a new trail. Moreover, it is clear that the Court below did not offend against that principle even as contended for by the majority.

In every instance where the conjunctive was used, the Court was spelling out the test in the abstract; was enumerating the ingredients which in general formulate the test of insanity under the law. It was natural and it was not error under any theory to enumerate those abstract tests by stating one after the other, joined by the conjunctive. But when the Court came down to charging the jury as to its duty in dealing with the defendant in this case, it laid the burden squarely upon the Government to prove the presence of both intellect and will before a verdict of guilty could be returned. Here is the specific language of the charge:

> "* * * the burden is upon the Government to establish that he was of sound mind, and by that term is not meant that he was of perfectly sound mind, but that he had sufficient mind to know right from wrong, and, knowing that the act he was committing at the time he was performing it was a wrongful act in violation of human law, and he could be punished therefor, and that he did not perform the act because he was controlled by irresistible and uncontrollable impulses."

In other words, the jury was clearly told that the Government had the burden to show both that the defendant had a sound mind, and that he was not controlled by irresistible impulse. All of the other language of the charge relating to insanity was inducement, was an effort to spell out abstract standards. But when the jury was told definitively the burden the Government was bound to assume, it was told that both aspects, intellect and will, must be established beyond a reasonable doubt.

· The last quoted statement from the charge of the Court below was taken verbatim from the decision of the Supreme Court in Hotema v. United States, 186 U.S. 413, 417, 22 S.Ct. 895, 46 L.Ed. 1225. In that case the trial court had sentenced an Indian to death for murder even though one jury had acquitted him for murder of another human being on the same day and another prosecution for a third death resulted in a hung jury. The proof showed that this Indian was suffering from a delusion that he was a witch and that he construed the Bible to impel him to commit the crimes. The sole issue upon the appeal was whether the trial court had sufficiently instructed the jury on the question of insanity. The court's charge in that case is reproduced, 186 U.S. on pages 416–417, 22 S. Ct. 895–896 of the published report. *That entire charge was read by the Court below here in almost identical words and constituted the charge which the majority opinion finds faulty.* The Supreme Court approved the Hotema charge and the death sentence imposed even though the proof of insanity was infinitely stronger than that which was before the Court in this case.

The portion of the charge given in Hotema, and which immediately follows that last quoted above, shows that the Supreme Court approved the use of the conjunctive in spelling out the abstract tests which the jury should consider in determining the two questions of criminal intent, that is, knowledge of what is wrong and the will to resist what is wrong and adhere to what is right.[8]

8. " 'In that state of case the defendant could not be excused upon the ground of insanity, and it would be your duty to convict him. But if you find from the

Practically every word of the charge approved by the Supreme Court in Hotema was given to the jury by the Court below with changes only as were necessary to identify the accused and the crime.

(2) The majority thinks "that the district court imposed upon the defendant too heavy a burden when it charged that the presumption of sanity continues 'until the contrary is shown by proof' * * * ". The fact is that the charge of the Court below was taken almost verbatim from the first decision of the Supreme Court in the Davis case. We quote in the margin [9] what the Supreme Court said at 160 U.S. 486, 16 S.Ct. 353, 357, and it will be found reproduced almost *totidem verbis* on page 130 of the transcript setting forth the Court's charge. The Supreme Court went even farther when, speaking through Mr. Justice Holmes in Battle v. United States, 209 U.S. 36, 38, 28 S.Ct. 422, 423, 52 L.Ed. 670, it replied to a contention that the trial court erred in declining to give an instruction: "The judge instructed the

jury that the burden of proof was on the government to prove that fact beyond a reasonable doubt, and he was not called upon to go further. Until evidence is given on the other side, the burden of proof is satisfied by a presumption arising from the fact that most men are sane. In this case, there was the merest shadow of evidence that the defendant was not of sound mind." And the language used by that Court, speaking through Mr. Justice Lamar, in Matheson v. United States, 227 U.S. 540, 543, 33 S.Ct. 355, 356, 57 L.Ed. 631,[10] goes even further and lays on the accused a burden far ·more onerous than that embraced in the charge now before us.

A reading of the entire charge of the Court below will show that the Court repeated more than once that the burden of proving sanity was upon the Government. The action of the majority in taking phrases out of context demonstrates the vice of such a procedure, one which is so universally condemned by the Courts.[11]

evidence, or have a reasonable doubt in regard thereto, that his brain at the time he committed the act was impaired by disease, *and* the homicide was the product of such disease, *and* that he was incapable of forming a criminal intent, *and* that he had no control of his mental faculties *and* the will power to control his actions, but simply slew Vina Coleman because he was laboring under a delusion which absolutely controlled him, *and* that his act was one of irresistible impulse, *and* not of judgment, in that event he would be entitled to an acquittal.' " [Emphasis added.]

9. "This view is not at all inconsistent with the presumption which the law, justified by the general experience of mankind, as well as by considerations of public safety, indulges in favor of sanity. If that presumption were not indulged, the government would always be under the necessity of adducing affirmative evidence of the sanity of an accused. But a requirement of that character would seriously delay and embarrass the enforcement of the laws against crime, and in most cases be unnecessary. *Consequently the law presumes that every*

*one charged with crime is sane, and thus supplies in the first instance the required proof of capacity to commit crime.* It authorizes the jury to assume at the outset that the accused is criminally responsible for his acts. But that is not a conclusive presumption, which the law, upon grounds of public policy, forbids to be overthrown or impaired by opposing proof. It is a disputable, or, as it is often designated, a rebuttable presumption * * *." [Emphasis added.]

10. "It would serve no useful purpose to discuss the ruling as to the burden of proof and the definitions of insanity, since they present no new propositions. In both these matters the court followed cases in which those subjects have been fully treated. He instructed the jury that *while the burden was upon the defendant to establish the fact that he was insane* at the time of the killing, yet they could not convict if they had a reasonable doubt as to his sanity. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499." [Emphasis added.]

11. Spring Co. v. Edgar, 1878, 99 U.S. 645, 25 L.Ed. 487; Patterson v. United States, 5 Cir., 1951, 192 F.2d 631, 633.

The condemnation by the majority of the actions of the Court below in both of the respects criticised results, in my opinion, from a "strained and hypercritical point of view once obtaining in the review of criminal cases" such as we condemned in the Patterson case. The charge as a whole, as I read it, presented the case to the jury fairly and fully and set up standards which accurately reflected the law as it exists. It is my conviction that "no ordinary juror, unskilled in legal dialectics, would have suspected the latent ambiguity which the [majority opinion] has discovered. Of course, hypercritical scrutiny of each word and sentence in every charge when considered alone would always reveal dual meanings. The sentences here in question, like the sentences in every charge, should be given a common sense interpretation in their relationship to all instructions and the issues raised. When so considered, it is impossible for me to believe that the jury was confused * * *." [12]

The fact is that the jury reached the only conclusion justified by the facts. Paradoxically, the only defense to the crime is the crime itself; if the record is stripped of the incriminating facts and circumstances tending to prove, and proving the defendant's guilt of the offense charged, there is not sufficient substantial evidence remaining to support a factual finding of the defendant's insanity. The dissenting opinion originally filed by Judge Rives stresses the crudeness with which appellant perpetrated the crime,—that he parked his car in plain view of the bank's window, that he entered the bank unmasked, that he was wearing clothes of distinctive character, and that he still had a part of the money on his person when arrested. The argument is novel that inexpertness in the commission of a crime is evidence of insanity. At most, it is evidence of lack of experience. It is common knowledge that the perfect crime has not yet been committed, and that even the most learned in the art of crime do things which look foolish in the light of hindsight.

(3) One reading the brief majority opinion, in connection with Judge Rives' dissent which produced the rehearing, is led to the conclusion that the real quarrel here is with the right and wrong test of insanity. The dissent states [229 F.2d 607]: "While the proper test of criminal responsibility is now highly debatable, I agree with the District of Columbia * * * that the better rule, more consonant with the developing science of psychiatry, is to ascertain simply, was the defendant suffering from a mental defect or disease which caused him to commit the criminal act?" It should be understood that in the rejection of the right and wrong theory, the repudiation is not primarily of "the century old 'right and wrong test' of the McNaghten case, * * *", but of the long line of decisions of the Supreme Court coming down through the Fisher case to the last pronouncement of the Supreme Court of the United States in Leland v. State of Oregon, 343 U.S. 790, 797, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302. There, in affirming a death sentence, the Court refused to strike down a statute of Oregon requiring that the defendant establish his insanity by proof beyond a reasonable doubt, holding that the Davis case established, "no constitutional doctrine, but only the rule to be followed in federal courts". The rule thus established for the federal courts has been applied by the state courts and adopted by text book writers with virtual unanimity.

These principles and philosophies are rejected *in toto* by the Durham case, which has not been cited outside the District of Columbia. The rule there evolved is thus epitomized:[13] "The rule we now hold must be applied on the retrial of this case and in future cases is not.

12. Dissent of Mr. Justice Black, joined in by Justices Reed and Burton, in Bihn v. United States, 328 U.S. 633, 639–640, 66 S.Ct. 1172, 1175, 90 L.Ed. 1485.

13. 214 F.2d 874–875.

unlike that followed by the New Hampshire courts since 1870. It is simply that an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect."

The District of Columbia Court was persuaded to this doctrine chiefly by treatises on subjects other than law to which the decision refers, by Weihoffen, Zilboorg, Deutsch, Glueck, Guttmacher, Overholser, Reik, and others doubtless learned in the field of psychiatry. I am not willing to accept their teachings and to reject completely the philosophies of such eminent jurists as Blackstone, Greenleaf, Justices Harlan, Fuller, Brewer, Shiras, White and Reed, and Judges Sibley and Hutcheson. Basic in the fundamental concept of a government of laws rather than of men is the conviction that juries must reach their verdicts under standards spelled out by instructions given by the Court applying guides furnished by accepted principles of the law.

To remove those standards and guides is to commit each case to the caprice of individual jurors invited to set up their own standards under the spell of psychiatrists provided by those able to employ them. This would, in my opinion, bring on great confusion and result in heavy burdens upon the enforcement of the criminal laws. Moreover, without furnishing any real safeguard to the protection of individual rights so precious under our system, such a course would serve inevitably to open avenues of escape for those guilty of crime and menace the effective operation of government. This is a consummation devoutly to be deprecated in a time when organized society seems to be fighting a losing battle with the perpetrators of atrocious and horrible crimes.

At all events, we ought not, in my opinion, to put the Court below in error when it was careful enough to charge the jury by reading to it only the words of instructions approved by the Supreme Court. We do not have the latitude accorded the Court of the District of Columbia to deviate from its holdings.